## Lawrence Kernan *vs.* Jane M. Morse.

No. 06-P-817.

Middlesex. March 5, 2007. - June 20, 2007.

Present: Gelinas, Cowin, & Graham, JJ.

*Divorce and Separation,* Modification of judgment, Alimony.

A probate judge erred in granting summary judgment to the wife on a complaint for modification of a divorce judgment, where triable issues remained as to whether the wife had less (or any) need for support, as measured by the parties' station, as a result of the substantial increase in her income and assets since the divorce and due to the parties' daughter's residing (generally) half-time with the husband. [382-385]

COMPLAINT for divorce filed in the Middlesex Division of the Probate and Family Court Department on October 6, 1995.

A complaint for modification, filed on June 3, 2003, was heard by *Edward F. Donnelly, Jr.,* J., on a motion for summary judgment.

*Wendy H. Sibbison* for Lawrence Kernan.

*Kathleen Ann Foley* for Jane M. Morse.

GRAHAM, J. Lawrence Kernan (husband) appeals from an order of the Probate and Family Court granting a motion for summary judgment filed by Jane M. Morse (wife), and dismissing his complaint to modify the divorce judgment. On appeal, the husband contends that the judge erred in granting the wife's motion for summary judgment by basing his decision solely on the husband's current ability to pay the support ordered in the divorce judgment without considering all relevant changed circumstances, including the wife's current ability to provide for her own support. We reverse the order and remand the matter to the Probate and Family Court for further proceedings consistent with this opinion.

1. *Background.* The parties were married in July, 1984, and were divorced in January, 1999. Two children were born of the

union — a son, in 1986, and a daughter, in 1989. At the time of the divorce, the husband, who has undergraduate and graduate degrees from the Massachusetts Institute of Technology, and a masters degree in business administration (M.B.A.) from Harvard Business School, was forty-five years of age and was an investment manager/principal at MDT Advisers, Inc. (MDT), a company that provided asset management for the pension plans of Arthur D. Little, Inc. The husband had worked at MDT since 1991. In 1998, the last full year before the divorce, the husband earned approximately $300,000.[1]

At the time of the divorce, the wife was forty-nine years of age, and although she had held positions of responsibility in business in the past (the wife also has an M.B.A.), she had been out of the workforce since 1987 in order to be a full time homemaker and "child rearer." The wife received unearned annual income of approximately $83,000 from an entity known as Big Sandy, LP,[2] and held interests in certain family trusts. Her weekly expenses amounted to $1,688.93 ($87,824.36 per year). During the marriage the parties enjoyed an "upper middle income" station.

The divorce judge determined that the husband's "employment [was] secure and his economic future [was] reasonably assured" and that he "will have a substantial retirement . . . and can reasonably be expected to receive continued contributions to his retirement." Continuing, the divorce judge found that it was unrealistic to assume that the wife, after years of unemployment, would be able to obtain meaningful employment commensurate with her prior employment history. The divorce judge stated that "it is clear that the Wife will need some assistance from the Husband" (who, the divorce judge noted, would be able to deduct for tax purposes alimony paid by him to the wife). The divorce judge also found that the wife will need "to reinvest some income . . . to augment her retirement."

---

[1]The husband's employment income from MDT consisted of salary, bonus, and profit distribution. The company also contributed an amount equal to fifteen percent of the husband's salary per year to a deferred income retirement plan.

[2]The $83,000 figure appears in the divorce judge's rationale of decision. It is to be noted, however, that the judge projected in her findings that, "going forward," the wife's annual income from Big Sandy would be $48,664 ($935.85 per week). At the time of the divorce, the wife's shares in Big Sandy were valued in excess of $300,000.

By the terms of the judgment of divorce nisi, as amended, the parties were awarded joint legal custody of the parties' children with the wife having primary physical custody of the parties' daughter and the husband having primary physical custody of the parties' son. The husband was ordered to pay the wife the sum of $1,000 per week, of which $500 was designated as alimony and $500 as child support.[3] In addition, the divorce judge divided the parties' property so that the wife received assets worth at least $1,007,324.86 and the husband received assets worth at least $790,972.50.

By a complaint for modification filed June 3, 2003, the husband sought to reduce his $1,000 weekly support payment to the wife. As grounds for the modification, the husband alleged that he had lost his job at MDT (and had been unemployed since July, 2002), that his sole source of income was from unemployment benefit payments in the amount of $1,124 every two weeks, that he had paid out of pocket the entire cost for health insurance for the parties' two children, and that the parties' daughter now resided equally with each party. Thereafter, the wife filed a motion for summary judgment, which was accompanied by an affidavit of undisputed facts. The husband filed his response to the wife's affidavit together with an affidavit of disputed facts.[4] A hearing was held before a another probate judge (motion judge) on June 14, 2005.

At the time of the hearing, the husband remained unemployed, though he had been involved in extensive networking in his search for employment. His weekly income, as reflected on his financial statement dated March 15, 2005, was $234, all from dividends and interest. The husband also listed on his March financial statement assets (including his one-half interest in property owned jointly with his new wife) worth $1,501,232; weekly expenses, exclusive of alimony and child support, of $1,495.96; and liabilities amounting to $1,586. The husband's new wife's company had been paying for the family's health insurance, including insurance for the parties' children.

---

[3] The judge noted that the total amount of support represents seventeen percent of the husband's annual income.

[4] "On a motion for summary judgment, we view the evidence in the light most favorable to the nonmoving party." *Joslyn* v. *Chang*, 445 Mass. 344, 345 (2005).

The summary judgment materials indicate that by 2005 the wife had obtained seasonal employment as a guide at a historical society, for which she was paid about $62 per week. Her unearned income from distributions from her interest in Big Sandy, LP, had increased from either $48,664 (see note 2, *supra*) or $83,000 annually in 1999 to $123,026.80.[5] In addition, the value of the wife's assets had increased to $1,393,142.21, *exclusive* of any value attributed to the wife's interest in Big Sandy, LP (see note 2, *supra*). By 2005, the wife's expenses had decreased modestly to $1,578.55 per week ($82,084 per year).

Finally, notwithstanding the order in the divorce judgment awarding the wife primary physical custody of the parties' daughter (with visitation rights in the husband), the husband stated in his verified response to the wife's affidavit that the daughter had resided with the parties on a fifty-fifty basis for approximately two years prior to the hearing, and although the daughter lived primarily with the wife in May, 2005, she would again split her time equally between both parents during the summer months; her residence was "in a state of flux."[6]

After the hearing,[7] the motion judge issued a brief memorandum and order in which he noted that the husband's financial

---

[5] In an explanatory note appended to her financial statement dated February 28, 2005, the wife stated that she had been informed by Big Sandy, LP, that distributions from the company for 2005 would be significantly less (by perhaps fifty percent) than in 2004.

The single justice granted the wife leave to file a supplemental appendix, which contains, among other things, more recent financial information and projections concerning Big Sandy, LP, the propriety of which was referred to the panel assigned to decide the appeal. The wife refers to this information in her brief. Although the husband objected to the filing of these materials by the wife, he filed (with leave) a supplemental appendix that contains additional materials concerning Big Sandy, LP, in order to respond, through his reply brief, to the wife's statements. The propriety of the husband's supplemental appendix was referred to the panel assigned to decide the appeal. As the materials in the supplemental appendices concerning Big Sandy, LP, were not before the motion judge, we decline to consider them or the parties' references to them in their briefs. See *Cullen Enterprises, Inc.* v. *Massachusetts Property Ins. Underwriting Assn.*, 399 Mass. 886, 889 n.9 (1987); *Germagian* v. *Berrini*, 60 Mass. App. Ct. 456, 459 (2004).

[6] At the time of the hearing, the parties' son was a college student in Australia.

[7] At the hearing, the motion judge inquired of counsel whether the husband

statements filed December 1, 2003,[8] and March 15, 2005, revealed that the husband "had met his expenses (including alimony and child support) *and* increased his assets during the 15½ month interval between the Financial Statements" (emphasis in original). The motion judge then stated, "[a]s such, the Motion for Summary Judgment is allowed," and dismissed the complaint for modification. The motion judge made no reference in his memorandum to the wife's financial status or to her current ability (if any) to contribute to her own support.

2. *Discussion.* Rule 56(h) of the Massachusetts Rules of Domestic Relations Procedure (2003) provides that a judge shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and responses to requests for admission under Rule 36, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party, here the wife, "must 'affirmatively demonstrat[e] that there is no genuine issue of material fact on every relevant issue, even if [she] would have no burden on an issue if the case were to go to trial.' " *Department of Rev.* v. *Mason M.,* 439 Mass. 665, 674 (2003), quoting from *Pederson* v. *Time, Inc.,* 404 Mass. 14, 17 (1989). In deciding a motion for summary judgment, a court does not resolve issues of material fact, assess credibility, or weigh evidence. See *Kelley* v. *Rossi,* 395 Mass. 659, 663 (1985); *Boston Seaman's Friend Soc., Inc.* v. *Rifkin Mgmt. Inc.,* 19 Mass. App. Ct. 248, 249 (1985); *Kelly* v. *Brigham & Women's Hosp.,* 51 Mass. App. Ct. 297, 299 n.4 (2001). See also *McMann* v. *State Ethics Comm.,* 32 Mass. App. Ct. 421, 422 n.2 (1992). With these principles in mind, we consider the husband's complaint for modification.

"To be successful in an action to modify a judgment for alimony . . . , the petitioner must demonstrate a material change

---

had filed financial statements subsequent to the divorce judgment but prior to his March 15, 2005, statement. Neither party voiced any objection to the motion judge's statement that he would take judicial notice of any such financial statements. See *Jackson* v. *Longcope,* 394 Mass. 577, 580 n.2 (1985); *Correllas* v. *Viveiros,* 410 Mass. 314, 317 (1991).

[8]On his financial statement filed December 1, 2003, the husband listed assets of $1,320,836, debts of $3,694, weekly income of $407, and weekly expenses, including child support and alimony, of $2,896.85.

of circumstances since the entry of the earlier judgment." *Green-berg* v. *Greenberg*, 68 Mass. App. Ct. 344, 347 (2007), quoting from *Schuler* v. *Schuler*, 382 Mass. 366, 368 (1981). "The change may be in the needs or the resources of the parties . . . or in their respective incomes." *Fugere* v. *Fugere*, 24 Mass. App. Ct. 758, 760 (1987). Similarly, a child support judgment generally "may be modified on a finding 'that a material and substantial change in the circumstances of the parties has occurred and the judgment of modification is necessary in the best interests of the children.' " *Brooks* v. *Piela*, 61 Mass. App. Ct. 731, 734 (2004), quoting from G. L. c. 208, § 28. See *Crowe* v. *Fong*, 45 Mass. App. Ct. 673, 677 & n.3 (1998) (noting slight difference in certain standards set forth in § 28 and Child Support Guidelines). "In determining whether to modify a support or alimony order, a probate judge must weigh all relevant circumstances," *Greenberg* v. *Greenberg*, 68 Mass. App. Ct. at 347, quoting from *Schuler* v. *Schuler*, 382 Mass. at 370; see *Parrish* v. *Parrish*, 30 Mass. App. Ct. 78, 89 (1991); *Croak* v. *Bergeron*, 67 Mass. App. Ct. 750, 755 (2006),[9] keeping in mind that the fundamental purpose of alimony is to provide economic support to the dependent spouse as measured by the "station" of the parties during the marriage. See *Katz* v. *Katz*, 55 Mass. App. Ct. 472, 478 (2002); *Greenberg* v. *Greenberg*, 68 Mass. App. Ct. at 347.

The husband argues that the motion judge, in considering only his "technical ability to pay" the 1999 order from his assets, without consideration of, or regard to, changed circumstances affecting the wife's need for support and without balancing all the equities (including the loss of his job and the contributions to his retirement plan), erred in dismissing his modification complaint on summary judgment. The husband asserts that on summary judgment, he established a triable case that the wife's need for support in 2005 was greatly reduced compared with her need at the time of the divorce.[10] The wife,

---

[9] In considering all the circumstances and balancing the equities, a judge, of course, may look at a party's assets in evaluating whether that party has the continuing ability to pay a support order despite a reduction in income. See *Schuler* v. *Schuler*, 382 Mass. at 375; *Katz* v. *Katz*, 55 Mass. App. Ct. 472, 481 (2002).

[10] The husband states, for example, that in 1999 the wife was found to need

in response, argues that although the motion judge was not required to consider her allegedly improved financial situation, as the husband's complaint made no reference to her improved circumstances, the motion judge did, in fact, consider all relevant circumstances. The wife also asserts that any increase in her income and assets was foreseeable at the time of the divorce and thus does not constitute a material change in circumstances.

We agree with the husband that summary judgment should not have entered for the wife.[11] Triable issues remain as to whether the wife has less (or any) need for support, as measured by the parties' station, as a result of the substantial increase in her income and assets since the divorce and due to the parties' daughter's residing (generally) half-time with the husband. Cf. *Department of Rev.* v. *Mason M.*, 439 Mass. at 675-676.[12] All relevant circumstances, including those pertaining to the husband's financial condition, must be weighed and the equities balanced. See *Heistand* v. *Heistand*, 384 Mass. 20, 27 (1981) (in deliberating on the equities of a modification petition, "[t]he balance may shift according to the facts of each case. . . . In any given case the judge *as fact finder* may thus attribute greater significance to a change in the husband's net worth than to

a total of $135,000 per year — $83,000 from her own income and $52,000 in support from him — to meet $88,000 in annual living expenses for herself and her daughter and to allow her to save $47,000 annually for her future. Continuing, the husband asserts that the wife herself now earns almost the entire $135,000 established for her annual needs by the court in 1999. In the husband's view, not only can the wife pay her, and her daughter's, current annual expenses of $82,085, she can put away the entire $47,000 the court found she needed toward retirement.

[11]We reject the wife's contention, pressed particularly at oral argument, that the motion judge was not required to consider or weigh any alleged changes in her circumstances. While it is true that the husband's complaint makes no reference to the wife's circumstances, the summary judgment materials put before the court address at length the various changes in the wife's financial situation.

[12]To the extent the wife suggested (through hearsay statements) in her February, 2005, financial statement that her income from Big Sandy, LP, may decline, further factual exploration may be necessary. See *Gilchrist* v. *Commissioner of Correction*, 48 Mass. App. Ct. 60, 65 (1999). Similarly, it may be necessary to flesh out further the daughter's living arrangements, which, as the husband acknowledges, are in a state of flux. *Ibid.* See generally *T.M.* v. *L.H.*, 50 Mass. App. Ct. 856, 858 (2001), and *Barreda* v. *Barreda*, 16 Mass. App. Ct. 918, 920 (1983), cited in *Kennedy* v. *Kennedy*, 17 Mass. App. Ct. 308, 312-313 (1983).

changes in the needs or life style of the wife or children" [emphasis added]). Accord *Brooks* v. *Piela*, 61 Mass. App. Ct. at 734-735. See *Thompson* v. *Thompson*, 12 Mass. App. Ct. 917, 918 (1981). Contrary to the wife's assertion, there is nothing in the divorce judge's findings to suggest, for example, that the increase in the wife's income was reasonably foreseeable. Indeed, at the time of the divorce the divorce judge apparently anticipated that the wife's income would decline by about forty-one percent.

The order allowing the wife's motion for summary judgment and dismissing the husband's complaint for modification is reversed, and the matter is remanded to the Probate and Family Court for further proceedings. The wife's request for appellate attorney's fees is denied.

*So ordered.*